# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF RHODE ISLAND

In re:

PATRICK O. MURPHY                                          Chapter   13
JEAN R. MURPHY                                           Case No.  10-13659

                 Debtors

## MEMORANDUM OF DECISION AND ORDER

The Chapter 13 Trustee seeks to effectuate the terms of the Debtors' Chapter 13 Plan (the "Plan") by requiring the Debtors to contribute to the Plan the net proceeds paid on account of a pre-petition personal injury claim of Debtor Jean Murphy. In turn, some two years after the confirmation of their Plan, the Debtors seek to retain these funds (as well as potentially additional funds) by modifying the Confirmation Order and exempting these funds from their bankruptcy estates. The procedural background of this case is somewhat torturous but critical to the resolution of the opposing goals of the Trustee and the Debtors in the matter.

## PROCEDURAL HISTORY

### A.  Debtors' Exemptions and Plan Confirmation

The procedural history of this case, which the Court outlined in a bench decision on December 11, 2012,[1] reaches back to August 2010 when the Debtors filed a voluntary skeleton petition under Chapter 13 of the Bankruptcy Code.[2] The Debtors subsequently filed their Plan and the remainder of the required Schedules and Statements, including Schedule C. The Debtors

---

[1] The audio recording of the hearing may be accessed at Doc. #83 of the Murphys' bankruptcy docket.

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §101, et. seq, as amended by the Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

1

listed as an exempt asset on Schedule C, "Personal injury claim pending – David Ursillo Attorney," and allocated the exemption amount among three separate provisions of § 522(d). The Debtors claimed 100% of the personal injury claim proceeds as exempt under § 522(d)(11)(E); pursuant to § 522(d)(11)(D), the Debtors claimed $21,625 of such proceeds as exempt; and under § 522(d)(5), the so-called "wildcard" exemption, the Debtors claimed $11,975 of such proceeds as exempt.[3] (Doc. #10).

On October 8, 2010, the Trustee filed an Objection to Confirmation of the Debtors' Plan on the basis that "the [D]ebtors' proposed payments under the Plan do not comply with the requirements of the means test, so called." (Doc. #13) ("Objection to Confirmation"). That same day, the Trustee also filed an Objection to the Debtors' claim of exemption "in a personal injury claim on the grounds that the debtors have not shown or demonstrated any facts to indicate that the personal injury claim is exempt." (Doc. #14) ("Objection to Exemptions"). In their response to the Trustee's Objection to Exemptions, the Debtors represented the following:

> The Debtors state that the personal injury claim is in the process of concluding and the Debtors claimed the exemption as stated in an abundance of caution. Upon resolution of the personal injury claim and approval by the Court the Debtors shall move to amend Schedule C in accordance with a discussion with the Chapter 13 Trustee regarding the appropriateness of the exemptions.

(Doc. #18).

Now-retired Bankruptcy Judge Arthur N. Votolato held a hearing on confirmation of the Debtors' Plan as well as the Trustee's Objection to Exemptions on November 4, 2010. At that hearing the Trustee presented the Plan to the Court for confirmation explaining:

---

[3] The Debtors calculated their exemption amount under § 522(d)(5) to conform exactly to the allowed wildcard amount for a *single* debtor.

2

> MR. BOYAJIAN: Your Honor, with respect to confirmation, the debtors will pay the sum of $1,882 a month for 60 months. Mr. Iascone is due a $2,411 counsel fee. There is approximately a $32,000 mortgage arrearage to BAC. In the -- oh, in addition, Your Honor, I'm sorry, in addition, federal tax refunds *and the proceeds from personal injury claims, one of which has been settled, will also be paid into the plan.* And the unsecured creditors receive approximately 56 percent of the amount of their claims. I recommend confirmation.

(Nov. 4, 2010 Hrg. Tr. at p. 3) (emphasis added).

Nothing further was mentioned with respect to the Trustee's Objection to Exemptions. The day after the hearing, on November 5, 2010, the Court entered an order sustaining the Trustee's Objection to Exemptions (Doc. # 22). Thereafter, on November 16, 2010, the Trustee submitted a Proposed Confirmation Order (Doc. #27) which contained the following express provision set forth in paragraph 7 of the order: "[t]he [D]ebtors shall pay to the Trustee the proceeds received from Jean Murphy's personal injury case." The Debtors did not object to the Proposed Confirmation Order as submitted by the Trustee, and the Court entered the Confirmation Order on November 24, 2010, confirming the Plan as described at the confirmation hearing (Doc. #29). The Debtors did not appeal either the Court's order sustaining the Trustee's Objection to Exemptions or the Confirmation Order.

### B. Settlement of the Personal Injury Claim

Three months after the Plan was confirmed and the personal injury exemptions disallowed, the Trustee filed an application to compromise Mrs. Murphy's personal injury claim.[4] (Doc. #34) ("Application to Compromise"). In the Application to Compromise the Trustee made the following recitations:

---

[4] The Debtors filed an application to employ Attorney David Ursillo as special counsel to pursue Mrs. Murphy's

3

    3. Prior to the filing of the within petition, the debtor, Jean Murphy, settled a personal injury claim with the tortfeasor's insurance company.

    4. A check in the amount of $21,094.80 was sent to her attorney, David Ursillo.

    5. Mr. Ursillo recommended settlement prior to the filing of the petition, and settlement was consummated prior to the filing of the petition.

The Debtors objected to the Application to Compromise, stating:

> Your Debtors state that in the current bankruptcy proceeding pending with the Court the Debtors have claimed exemptions under 522(d)(11)(E), 522(d)(11)(D) and 522(d)(5).
>
> The Debtors further state that this Court should withhold its decision on the Trustee's Application until the cases that are currently under advisement in this Court, namely, In re Vargas 10-13103 and In re Rodriguez 10-13099[5] are decided in an effort to determine what, if any, amount of the net proceeds of this claim are not part of the bankruptcy estate to conform with the result in those pending decisions in that the Debtors may be entitled to at least part of the proceeds of the personal injury action.

(Doc. #44-1).

At the hearing on the Application to Compromise, held on March 24, 2011, the Trustee informed the Court:

| | |
|---|---|
| Mr. Boyajian: | Your Honor, I spoke yesterday about this case with Mr. Iascone. Your Honor has under advisement a case involving whether or not proceeds from a personal injury case are disposable income which should be paid into a plan. Mr. Iascone filed an objection saying that the settlement of this case should await decision in that case. I spoke to him yesterday. He doesn't have an objection to the amount of the settlement. He doesn't have an objection to the attorneys fees either. So subject to Your Honor's approval, both motions can be granted, but I told Mr. |

---

personal injury claim on September 24, 2010 (Doc. #12). Attorney Ursillo is not related to this Bankruptcy Judge's husband Michael Ursillo.

[5] In re Rodriguez was ultimately dismissed upon motion of the debtor prior to a ruling by the Court on the matter under advisement.

|  |  |
|---|---|
|  | Iascone that I would hold up distribution of any funds until Your Honor comes out with that decision. |
| The Court: | Okay. And you're asking then just to get the settlement out of the way and talk about the proceeds later? |
| Mr. Boyajian: | Yes, Your Honor. |
| The Court: | So ordered. |

(Mar. 24, 2011 Hrg. Tr. at p. 2). No order was entered by Judge Votolato modifying or vacating the Order sustaining the Trustee's Objection to Exemptions and no order was entered modifying the Confirmation Order. For that matter, no order was entered or provision set forth in the Confirmation Order reserving any exemption claim of the Debtors to the settlement proceeds.

Six months after Judge Votolato authorized the personal injury proceeds to be placed into escrow in the Murphys' case, Judge Votolato entered a decision and order in *In re Vargas*, Case No. 10-13103, 2011 WL 4482005 (Bankr. D.R.I. Sept. 27, 2011). In *Vargas*, the debtor listed a pre-petition personal injury claim on Schedule B of her petition as "unliquidated" and claimed an exemption on Schedule C pursuant to § 522(d)(5). The Chapter 13 trustee objected to her claim of exemption "on the grounds that those funds are part of the debtor's projected disposable income." (*Vargas*, Case No. 10-13103, at Doc. #13). In response to the trustee's objection to her claim of exemption, the debtor maintained that because the personal injury proceeds were not known or virtually certain at the time of plan confirmation, the proceeds should not be considered when calculating her projected disposable income.

In his decision and order, Judge Votolato overruled the trustee's objection to the debtor's exemptions because the trustee's only ground for the objection was that the debtor's personal injury claim proceeds were disposable income. Judge Votolato ruled that this kind of objection was applicable at the plan confirmation stage but not when evaluating the merits of an objection

5

to a debtor's claim of exemptions. Second, Judge Votolato ruled that the settlement proceeds from the debtor's pre-petition personal injury claim would not be considered disposable income for purposes of § 1325, reasoning that

> When Vargas' confirmation order was entered on January 6, 2011, no one, including the Debtor, the Chapter 13 Trustee, or the Court could place a *known or virtually certain value* on the personal injury claim, and/or whether the Debtor would receive *any* award. . . . For the reasons discussed above and as applied to the facts here, this Court concludes that the Debtor's personal injury claim should not be included in her §1325 disposable income analysis.

*Vargas*, 2011 WL 4482005, at *2 (emphasis in original).

The Chapter 13 trustee filed an appeal of Judge Votolato's decision to the First Circuit Bankruptcy Appellate Panel ("BAP"). In reviewing the appeal, the BAP did not decide the merits, but instead dismissed the appeal on the following grounds:

> Although the bankruptcy court addressed in the Ruling the issue of whether the Claim could be applied to the projected disposable income calculation, it did so after it entered the Confirmation Order and in the context of ruling on the Objection [to Exemptions], not in response to the Trustee's objection to plan confirmation. *When the bankruptcy court issued the Ruling, the Trustee's objection to the plan was moot given the intervening Confirmation Order which did not reserve the issue.* . . . The parties in this case "cannot confer jurisdiction over a moot case by acquiescence or consent."

*In re Vargas*, 2012 WL 2450170, at *4 (B.A.P. 1st Cir. Jun. 8, 2012) (emphasis added).[6]

Based on the BAP's ruling in *Vargas*, the Trustee moved to require the release of Mrs. Murphy's personal injury settlement proceeds from escrow, and filed a Motion to Modify Chapter 13 Plan After Confirmation (Doc. #65) ("Trustee's Motion to Modify").

---

[6] Additionally, in *In re Santiago*, 478 B.R. 516, 523 (B.A.P. 1st Cir. 2012), the BAP explained that "[i]n this case, however, no party filed an objection to the plan and the bankruptcy court confirmed the unopposed plan before it ruled on the Objection. Accordingly, any arguments related to § 1325(b) were moot by the time the court issued the Order [sustaining the trustee's objection to the debtor's claimed exemptions]."

### C. This Court's Prior Ruling On Procedural Posture of Debtors' Case

In the Trustee's Motion to Modify, the Trustee sought to increase the Debtors' plan payments to include the settlement funds. In the Debtors' Response to the Trustee's Motion to Modify (Doc. #66), the Debtors asserted that "the Trustee's Motion to Modify fails to recognize the Debtors' exemptions listed in their schedules." Ten days later, the Debtors filed a Motion to Modify the Confirmation Order (Doc. #67) ("Debtors' Motion to Modify"), to which the Trustee filed an objection (Doc. #69), contending that "[p]ursuant to the [Confirmation Order], Debtors are required to pay to the Trustee the proceeds of the personal injury case" and that "the Debtors have stated no reasons in their Motion why they should receive the net proceeds of the personal injury case." This Court heard both motions to modify on September 13, 2012, and ordered the parties to submit memoranda of law addressing the issue of Judge Votolato's disposition of the Debtors' claim of exemptions and any other issues they wished to bring to the Court's attention.

Upon review of the parties' memoranda, the Court reopened the matter for further hearing on December 11, 2012, at which time the Court rendered a bench decision (Doc. #83, audio hearing), on the impact of Judge Votolato's comments at the March 24, 2011 hearing. This Court concluded that Judge Votolato did not reopen the issue of the validity of the Debtors' claimed exemptions and did not make a final determination on whether the Debtors were entitled to modify their plan as a result of a pending decision in *Vargas*. Additionally, this Court concluded that in the event the Debtors met the threshold standards for modifying their Plan, the Trustee's Objection to Exemptions could not be construed as including their claim under the wildcard exemption provision of § 522(d)(5) because the Trustee's Objection to Exemptions and the order sustaining such objection could only conceivably apply to the claims listed under § 522(d)(11)(D) and § 522(d)(11)(E). Thus, this Court found that a valid exemption claim of up

to the wildcard ceiling of $11,975 for Mrs. Murphy's personal injury claim remained intact. Further, the Court clarified the central issue now before the Court on the respective motions of the Trustee and the Debtors. In this Court's view, the "real question is whether the Debtors have met their burden of establishing legitimate grounds for modifying the Plan to now rescind their prior agreement on the treatment of the personal injury proceeds as part of the Plan and whether they can now seek to exempt such proceeds under [§] 522(d)." (Doc. #83, audio hearing). Following this determination, the Court afforded the parties the opportunity to submit supplemental legal memoranda on this precise issue.

## POSITION OF THE PARTIES

The Debtors filed a Supplemental Memorandum of Law (Doc. #90), in which the Debtors assert two arguments. First, they maintain that their claim of exemption under the "wildcard" exemption of § 522(d)(5) applies to protect the personal injury proceeds held in escrow because the Trustee did not properly object to the exemption. Second¸ the Debtors suggest that the Confirmation Order was effectively modified by Judge Votolato at the March 24, 2011 hearing, permitting the Debtors to reopen the issue of whether the settlement proceeds are excluded from their disposable income and thus out of the reach of their creditors. They further reason the value of the personal injury claim was not known or virtually certain when their petition was filed. Therefore, they argue, under Judge Votolato's decision in *Vargas* the settlement proceeds should not be included in the disposable income calculation and are not required to be contributed to the Plan.

In his Reply Memorandum (Doc. #91), the Trustee argues that Judge Votolato did not enter any final order on March 24, 2011, but instead "ruled only that the funds could be held in escrow and made no determination regarding the disposition of those funds." (Doc. #91, at p. 4,

8

n.7). The Trustee emphasizes that the Debtors waived the issue by not objecting to the Proposed Confirmation Order in accordance with the Trustee's explanation at the confirmation hearing that the net personal injury settlement proceeds would be contributed to the Plan. Additionally, the Trustee asserts, the Debtors consented to funding the Plan with the personal injury proceeds, waiving any exemption they might have in such proceeds. The Trustee also notes that at the time of their bankruptcy filing, the amount of the personal injury proceeds was in fact known by the Debtors and the funds had already been paid into escrow. Finally, the Trustee posits that the Debtors have presented no rationale, be it a change in law or a change in circumstances, to justify modification of the Confirmation Order.

The Debtors, in their Response to Trustee's Reply Memorandum (Doc. #92), informed the Court, for the first time, that the Debtors have two outstanding claims related to Jean Murphy's personal injury claim that are still unresolved: a loss of consortium claim belonging to Debtor Patrick Murphy and an uninsured motorist claim arising under Jean Murphy's insurance policy. As to these claims, the Debtors state that their value was unknown when they filed their petition and are "still ongoing as only the underlying tort claim was settled." (Doc. #92, at p. 2). Finally, the Debtors suggest that "new law was presumably made in Judge Votolato's *Vargas* decision by allowing the Debtors to retain the post petition received personal injury proceeds," and this "new law" is a legitimate reason for now modifying the Plan. *Id.*

In response to these arguments, the Trustee filed a further Reply Memorandum (Doc. #95), in which he contends that the Debtors "now raise for the first time an argument that Mr. Murphy has some share of the damages because of a 'loss of consortium'" (Doc. #95, at p. 1). The Trustee cites the § 341 meeting of creditors testimony, a letter from counsel in October 2010, the application to employ Attorney Ursillo as special personal injury counsel to the

9

Debtors, and Attorney Ursillo's application for fees—none of which refer to a claim on Mr. Murphy's behalf. Once again, the Trustee maintains that "[n]o legitimate reason has been advanced by the debtors as to why the Order Confirming Chapter 13 Plan which provides for the payment of the proceeds of Mrs. Murphy's personal injury case to creditors should not be upheld." (Doc. #95, at p. 3).

After fully considering the arguments of the parties, the Court finds that there has been no re-opening or prior modification of the Confirmation Order as originally entered in November 2010, and this Order is binding on the parties. Moreover, the Court concludes that the Debtors have failed to meet their burden to establish a legitimate reason for modifying the Confirmation Order to relieve them of their agreement with the creditors to contribute the net settlement proceeds from Mrs. Murphy's personal injury claim to the Plan.

## JURISDICTION

The Court has jurisdiction over this contested matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2).

## DISCUSSION

### A. Post-Confirmation Modification of Plan

Section 1329 of the Bankruptcy Code, governing post-confirmation modifications of chapter 13 plans, provides in relevant part:

> **(a)** At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > **(1)** increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > **(2)** extend or reduce the time for such payments; [or]

> **(3)** alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; . . .

While courts universally acknowledge that post-confirmation modifications are permissible in light of § 1329, there is disagreement on the circumstances under which Chapter 13 plans may be modified. There are two conflicting views on the issue. One school of thought interprets this provision as requiring a substantial change in circumstances, while the other school of thought permits plan modifications without such a threshold requirement.[7] In essence, the split in opinion among the courts stems from the seemingly irreconcilable language of § 1327(a) and § 1329. Section 1327(a) provides, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." This apparent *res judicata* effect of § 1327(a) appears to conflict with the modification provisions of § 1329. The question then arises: What threshold must a party moving for modification meet in order to modify a confirmed plan?

In *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000), the Court of Appeals for the First Circuit refrained from "adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329," *id* at 32, and instead determined that § 1329 sets forth a four-part framework for such modifications:

> First, "modifications are only allowed in three limited circumstances" provided by the statute.[8] Second, as provided by § 1329(b)(1) of the Code, "a modified plan is

---

[7] An informative and comprehensive review of the two lines of authority can be found in *In re Thomas*, 291 B.R. 189, 192-93 (Bankr. M.D. Ala. 2003).

[8] The three limited circumstances referenced by the Court in *In re Barbosa* are set forth in Bankruptcy Code § 1329(a)(1)-(3): to "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than

>only available if §§ 1322(a), 1322(b), 1325(a) and 1329(c) of the bankruptcy code are met." Third, a modification may only be proposed in good faith. Fourth, "all proposed modifications need not be approved and in practice not all modifications are approved." Moreover, the statutory framework is clear in allowing post-confirmation modifications, a feature that is incongruent with the application of the doctrine of *res judicata*.[9]

*Id.* at 39-41 (internal citations omitted).

Importantly, the First Circuit noted that Congress accorded "significant finality to confirmation orders in Chapter 13 cases" through § 1327(a) and the party moving for modification must present a "legitimate reason" for such modification. *See id.* at 41; *see also In re Trumbas*, 245 B.R. 764, 766-67 (Bankr. D. Mass. 2000) ("Although there may be an absolute right to request modification of a plan between confirmation and completion of plan payments, it does not necessarily follow that there is an automatic right to have the request allowed. As a practical matter, a party requesting modification of a post-confirmation chapter 13 plan must have a legitimate reason for doing so, and the party must strictly conform to the three limited circumstances set forth in the statute.").

In *Barbosa*, the First Circuit upheld the bankruptcy court's ruling which permitted the modification of a confirmation order to include the proceeds from the sale of the debtor's real estate in the required plan payments. The modification was found to be within the scope of § 1329(a) despite the fact that "the Property's sale was contemplated by the parties at the time of entering into the Stipulation [agreeing to the market value of the Property] and by the Court when it confirmed the Plan." *Barbosa*, 235 F.3d at 38. In setting forth a "legitimate reason"

---

under the plan." With BAPCPA, a fourth circumstance was inserted into § 1329, but this added circumstance is inapplicable to the Debtors' case.

[9] Although *Barbosa* suggests that a confirmation order does not have a *res judicata* quality, the First Circuit has also stated that "[a]n order confirming a plan in a Chapter 13 case is customarily *res judicata* as to all issues that were or could have been decided during the confirmation process." *In re Carvalho*, 335 F.3d 45, 49 (1st Cir. 2003).

standard, the First Circuit attempted to reconcile the goal of finality encompassed in § 1327(a) with the plan language of § 1329 allowing post-confirmation modifications:

> Upon a close analysis, the bankruptcy court's conclusions of law do accord significant finality to confirmed plans without requiring specific threshold tests not contemplated by the statute. Therefore, we adopt the [Seventh Circuit] *Witkowski* approach as modified by the bankruptcy court [with the "legitimate reason" standard] and refrain from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329.

*Id.* at 41.

Whether a party has presented a legitimate reason to modify a plan is a highly fact-dependent question.[10] For example, in *In re Santiago*, 319 B.R. 65 (Bankr. D.P.R. 2004), the debtors moved to modify their plan when the Chapter 13 trustee filed a motion to dismiss for failure to make plan payments. In their motion to modify, the debtors proposed reducing the dividend to unsecured creditors from 100% to 64%. The trustee objected to such modification, arguing that the modification was not proposed in good faith "because the Debtors did not provide a reason for the modification and their disposable income has not changed." *Id.* at 67. In denying the debtors' motion to modify the plan, the court emphasized the debtors' lack of justification for a modification:

> The Court finds that the Debtor's [sic] modification in the instant case is not proposed in good faith. The confirmed plan originally called for sixty monthly payments and a 100% distribution. After being 4 payments in arrears, the Debtors

---

[10] *See, e.g.*, *In re Salva*, Case No. 09-09405, 2009 WL 2898822 (Bankr. D.P.R. Apr. 1, 2009) (finding that the availability of unencumbered assets resulting from the debtors' payment of their mortgage using exempt funds was not a legitimate reason for the trustee's motion to modify the plan); *In re Kieta*, 315 B.R. 192 (Bankr. D. Mass. 2004) (allowing the debtor's motion to refinance on the condition that the debtor increase the dividend to unsecured creditors on account of the proceeds when the "order of confirmation provide[d] that the appreciation in value of the Debtor's Property [was] property of the estate"); *In re Ocasio Torres*, 319 B.R. 61 (Bankr. D.R.I. 2004) (denying the debtor's motion to modify the confirmed plan on the grounds that "the fact that the liquidation value [of the debtors' assets] is zero and that the Debtors could have proposed a shorter plan does not defeat the finality of the Debtor's confirmed plan. . . . The Debtors do not dispute that they have not shown any change in circumstances that have affected their ability to make plan payments.").

13

> moved to modify their plan to substantially decrease payments on their unsecured debt. As the Debtor[s] themselves admit, they have not shown any changes of circumstances which would affect their ability to pay creditors. They have not provided any explanations as to what their current financial situation is or why they cannot continue to pay their creditors. They have not filed amended schedules, so it must be assumed that their disposable income remains the same. The Court notes that the Debtors did not provide any reason for the modification request.

*Id.*

In *In re Watson*, 417 B.R. 165, 169-70 (Bankr. D.N.H. 2009), the court granted the Chapter 13 trustee's motion to modify the confirmed plan on account of income tax refunds received during the plan period, reasoning that despite "the fact that the Trustee did not raise any issue at the time of confirmation regarding the receipt of postpetition tax refunds. . . Section 1329 allows the Trustee to . . . seek to increase the amount of payments on claims of a particular class, e.g., the general unsecured creditors." *Id.* The court's ruling in *Watson* is consistent with the outcome in *Barbosa*, where the moving party in each case presented a legitimate reason for modifying the plans pursuant to § 1329(a)(1): to increase payments to creditors.

### B.  Debtors' Asserted Basis for Modification

The Debtors present several grounds they assert justify modifying their confirmed Plan. First, the Debtors argue that "new law" was created in the District of Rhode Island when Judge Votolato decided *Vargas* and, as a result, the Debtors are now entitled to benefit from this purported intervening change in law. What the Debtors fail to acknowledge, however, is that Judge Votolato's decision in *Vargas* was made on the heels of the United States Supreme Court's decision in *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010)—a case decided prior to the bankruptcy petition filed in *Vargas* as well as the petition filed by the Murphys.[11] In *Lanning*, the

---

[11] The date of the Supreme Court's decision in *Lanning* was June 7, 2010. The Vargas bankruptcy case was filed on

14

debtor received a one-time buyout from her former employer during the six months prior to the bankruptcy filing in an amount which grossly inflated her disposable income, as calculated under the means test pursuant to Official Form B22C. The Supreme Court ultimately adopted the "forward looking" test in evaluating a debtor's disposable income, and held that a court may consider "known or virtually certain changes in the debtor's income" when evaluating the debtor's disposable income for purposes of confirmation under § 1325. *Id.* at 2469, 2472-74.

Following the Supreme Court's decision in *Lanning*, Judge Votolato heard arguments in *Vargas* to address a pre-petition personal injury claim listed by the debtor on her schedules. He ruled that because the Court could not place a known or virtually certain value on the debtor's personal injury claim, the proceeds should not be included when considering the debtor's disposable income. The Murphys contend that Judge Votolato's decision in *Vargas* introduced new law.

Contrary to the Debtor's contention, because *Lanning* was decided two months before the Murphys' bankruptcy filing, no new law arose during the Murphys' case as a result of Judge Votolato's decision in *Vargas*. Judge Votolato merely applied the principles enunciated in *Lanning* to the debtor's particular circumstances in *Vargas*. The Murphys had the same opportunity as the debtor in *Vargas* to seek, prior to the Court entering the Confirmation Order, to retain the personal injury proceeds on the *Lanning* disposable income grounds;[12] yet they

---

July 26, 2010. The Murphys' bankruptcy case was filed on August 31, 2010.

[12] While this Court does not reach the disposable income issue regarding the personal injury settlement proceeds because of the intervening Confirmation Order in which the Debtors voluntarily agreed to contribute such proceeds to the Plan, the Court agrees with the Trustee that it is unlikely the Debtors would prevail on the issue under *Lanning*. The amount of the net settlement proceeds were not only known to the penny at the time of the filing of the Debtors' bankruptcy case, they were actually being held in escrow by their counsel pending the Court's approval of the settlement that had already been reached before they filed bankruptcy. *See* Application to Compromise (Doc. #34, at p. 1).

15

failed to do so. There was no objection by the Murphys to the Trustee's description of the Plan terms, no reservation of rights with regard to any claim of exemption for the personal injury proceeds, no contention that the Debtors in any way disputed the Proposed Confirmation Order and its express provisions relating to contribution of the personal injury proceeds to the Plan, and no appeal of the Confirmation Order. The only change that has occurred since entry of the Confirmation Order is perhaps that the Debtors realized, too late, the error of not previously attempting to carve out the claim under *Lanning* or reserving the wildcard exemption issue.

The binding effect of the Plan should not be disregarded simply to accommodate neglect or inadvertence by a party or its attorney. *See Barbosa*, 235 F.3d at 41 ("[T]he bankruptcy judge was careful to note that 'motions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object [to] confirmation of a Chapter 13 plan or whose objections to confirmation have been overruled.'"). The Debtors' motion to modify cannot now be used as a "fix-it" mechanism to rectify their decision to contribute the personal injury proceeds to the Plan, regardless of the potential exempt status of such proceeds. *See* § 1322(b)(6) (permitting a plan to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor").

The Debtors' second rationale for a modification of their Plan is that on March 24, 2011, Judge Votolato, pending his ruling in *Vargas,* allegedly "left the door open" for the Court to rule in their case "that the personal injury proceeds received post-filing are not disposable income." (Doc. #92, at p. 2). This Court ruled during the December 11, 2012 hearing that any door that may have been open still did not eliminate the requirement for the Debtors to meet the *Barbosa* standard to modify the Confirmation Order. The Debtors did not reserve the disposable income issue at the confirmation hearing or in the Confirmation Order, and the Confirmation Order has

16

never been amended. Thus, the issue of whether these proceeds are disposable income is not properly before this Court for review and does not serve as a legitimate reason for modification of the Plan. *See In re Vargas*, 2012 WL 2450170, at *4 (B.A.P. 1st Cir. Jun. 8, 2012).

Third, the Debtors contend that along with Mrs. Murphy's settled personal injury claim, she has an unresolved uninsured motorist claim and Mr. Murphy has a separate claim for loss of consortium relating to Mrs. Murphy's injuries. These claims, according to the Debtors, are unresolved and on-going. The Confirmation Order provides that "[t]he [D]ebtors shall pay to the Trustee the proceeds received from Jean Murphy's personal injury case." Consequently, all that is currently at issue before the Court is whether the settlement proceeds from Mrs. Murphy's personal injury claim that are currently held in escrow must be released for the benefit of the Debtors' creditors. Whether proceeds from Mrs. Murphy's uninsured motorist claim or Mr. Murphy's loss of consortium claim, if any are awarded, must also be contributed to the Plan for the benefit of creditors will have to be the subject of a separate motion to be heard at the appropriate time.[13]

Of the four permissible grounds for modifying a plan under § 1329, the Debtors fail to satisfy any. Even assuming *arguendo* that the door to modification of the Plan was opened by Judge Votolato's comments during the March 24, 2011 hearing (and this Court believes it was not), it in no way relieves the Debtors from demonstrating a legitimate reason to renege on their promise to their creditors to contribute the personal injury settlement proceeds to the Plan. The

---

[13] The Trustee in his Second Reply Memorandum (Doc. #95) asserts that the existence of these claims was raised by the Debtors for the first time in their Response to the Trustee's First Reply Memorandum (Doc. #92). The Trustee also raises several additional issues relating to these other claims, including whether the Debtor properly disclosed these claims at the § 341 meeting of creditors. Given such issues and the fact that there may never be any proceeds generated by these claims, disposition of such proceeds should awards be made to the Murphys should not be addressed by the Court at this time and cannot now be used to waylay the Confirmation Order which incorporated the proceeds of Mrs. Murphy's personal injury proceeds that are being held by the Trustee in escrow.

Debtors have failed to provide any such legitimate reason to modify the Plan or Confirmation Order. They voluntarily agreed to contribute Mrs. Murphy's personal injury proceeds to the Plan fully cognizant of the Supreme Court's ruling in *Lanning* and the Trustee's objection to their exemptions of such claim. Nothing has changed for the Debtors since the entry of the Confirmation Order that they can point to—no change in law or change in facts—to justify modification of their Plan as confirmed.[14]

Without a legitimate basis for modifying the Plan, the Confirmation Order remains binding on the Debtors pursuant to § 1327(a). On the other hand, the Trustee has established a sound and reasonable basis for modifying the Plan: to effectuate the provisions of the Confirmation Order by requiring the Debtors to contribute Mrs. Murphy's personal injury proceeds to the Plan as the Debtors had voluntarily agreed to do.

### ORDER

The Debtors' Motion to Modify is DENIED, and the Trustee's Motion to Modify is GRANTED. The net settlement proceeds held in escrow shall be released to the Trustee for contribution to the Plan and shall be disbursed by the Trustee to creditors in accordance with the terms of the Plan.

Dated: this 6th day of March, 2013

> By the Court,
>
> Diane Finkle
> _____
> Diane Finkle
> U.S. Bankruptcy Judge
> Date: 3/6/2013

---

[14] Following the confirmation hearing, the Debtors filed a Motion for Determination of Disbursement of Settlement Proceeds (Doc. #53) in which they requested an allotment of $3,100 from the personal injury settlement proceeds to be paid toward outstanding post-petition medical bills unrelated to the personal injury claim. No party filed an objection to this motion and the Court entered an order granting the motion.